Case 4:22-cv-01645   Document 24   Filed on 07/25/23 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
July 25, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JUANITA LACOUR, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:22-cv-01645 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Juanita Lacour ("Lacour") seeks judicial review of an administrative decision denying her application for supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Lacour and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 15–16. After reviewing the briefing, the record, and the applicable law, Lacour's motion for summary judgment (Dkt. 15) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 16) is **GRANTED**.

## BACKGROUND

On May 29, 2020, Lacour filed an application for Title XVI supplemental security income, alleging disability beginning on May 29, 2020. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Lacour was not disabled. Lacour filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit

their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations

detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Lacour had not engaged in substantial gainful activity since May 29, 2020, the application date. *See* Dkt. 6-3 at 19.

The ALJ found at Step 2 that Lacour suffered from "the following severe impairments: diabetes mellitus; degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease (COPD); thyroidectomy; obesity; left knee osteoarthritis; depression; and anxiety disorder." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments. *See id.* at 20.

Prior to consideration of Step 4, the ALJ determined Lacour's RFC as follows:

> [Lacour] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except [Lacour] can never climb ropes, ladders, or scaffolding; frequently climb ramps and stairs, kneel, and crawl; and occasionally stoop and crouch. [Lacour] can frequently push and/or pull with the left lower extremity. [Lacour] can work with a knee brace on the left knee. [Lacour] can perform tasks not requiring concentrated exposure to industrial dusts, gases, fumes, and inhalant irritants of the type typically found in plants, warehouses, garages, and machine shops. [Lacour] can perform detailed but not complex instructions and tasks; will rarely be unable to maintain a sustained rate of concentration, persistence and pace, i.e., [Lacour] will be off-task up to ten percent of the workday; and [Lacour] can frequently adapt to changes in workplace methods and routines.

*Id.* at 22.

At Step 4, the ALJ found that Lacour "is capable of performing past relevant work as a cleaner." *Id.* at 27. Accordingly, the ALJ found Lacour not disabled. *Id.* at 27–28.

3

## DISCUSSION

This social security appeal involves only one issue: whether substantial evidence supports the ALJ's RFC. Specifically, Lacour contends that the ALJ's RFC "fails to recognize that [Lacour] cannot perform the walking or standing required of light work, and because the ALJ's finding regarding the extent of [Lacour]'s environmental limitations and mental limitations is not supported by any physician of record." Dkt. 15 at 5. I disagree.

As for the walking and standing requirements of light work, the State agency medical consultants ("SAMCs") found that Lacour "could perform a light level of exertion" and "could occasionally stoop, crouch, and climb ropes, ladders, or scaffolding" and "could frequently kneel, crawl, and climb ramps and stairs." Dkt. 6-3 at 26. The ALJ found this opinion "persuasive" and "supported by MRI testing of the lumbar spine and x-rays of the left knee coupled with diabetes mellitus, and obesity." *Id*. This is a credible choice and Lacour points me to no contrary medical evidence.

As for Lacour's environmental limitations, the SAMCs found no need for any environmental limitations. Yet, the ALJ found this opinion "unpersuasive" and unsupported by Lacour's diagnoses "of COPD and right hemithyroidectomy followed by reported [sic] of increased dry mouth at night." Dkt. 6-3 at 26. Instead, the ALJ determined that Lacour "can perform tasks not requiring concentrated exposure to industrial dusts, gases, fumes, and inhalant irritants of the type typically found in plants, warehouses, garages, and machine shops." *Id*. at 22. Similarly, with Lacour's mental limitations, the SAMCs "indicated [Lacour] had only non-severe mental impairment." *Id*. at 26. Yet, the ALJ found this opinion unpersuasive "as the medical record supports severe mental impairments and related functional limitations as described in the residual functional capacity. Specifically, [Lacour] was diagnosed and treated by a psychiatrist for ongoing symptoms of depression." *Id*. Instead, the ALJ determined that Lacour "can perform detailed but not complex instructions and tasks; will rarely be unable to

maintain a sustained rate of concentration, persistence and pace[;] will be off-task up to ten percent of the workday; and [Lacour] can frequently adapt to changes in workplace methods and routines." *Id.* at 22.

Lacour argues that under the Fifth Circuit's decision in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ's decision is lacking substantial evidence because "no medical source of record supports the specific environmental and mental limitations found by the ALJ." Dkt. 15 at 8. But no such sources are necessary. *See Ripley*, 67 F.3d at 557 ("The absence of [a medical source statement], however, does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."). What is required is that substantial evidence support the RFC. "The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible." *Jones v. Berryhill*, No. CV 17-5324, 2018 WL 1325851, at *2 (E.D. La. Feb. 23, 2018). That means that even if I might have reached a different conclusion, I must uphold the ALJ's opinion so long as substantial evidence supports it. *See id.*

Here, the ALJ based the environmental limitations on Lacour's COPD, right hemithyroidectomy, and reports of increased dry mouth at night. *See* Dkt. 6-3 at 26. Lacour points to no contrary medical evidence that would warrant greater limitations than those imposed by the ALJ. *See Ramirez*, 606 F. App'x at 777. To the extent Lacour believes that her own testimony constitutes contrary evidence warranting greater limitations, the ALJ determined that Lacour's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Dkt. 6-3 at 23. Specifically, the ALJ noted that Lacour's most recent treatment records show that she "denied shortness of breath" and that Lacour's ear, nose, and throat doctor "noted [Lacour] was doing fine." *Id.* at 24–25. Accordingly, the ALJ's decision represents a credible choice.

5

Regarding Lacour's mental limitations, the ALJ based his decision on Lacour's "depressed mood despite medication management." *Id.* at 26. Yet, Lacour argues that because she "was in special education while in [middle and high] school"—because "she couldn't read and do [her] math"—she therefore "is not able to perform detailed work." Dkt. 15 at 7 (quotation omitted). But the ALJ noted that Lacour's "individual education plan (IEP) and evaluation were no longer available." Dkt. 6-3 at 25. It was Lacour's burden to ensure that the ALJ had relevant information about Lacour's conditions. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). More importantly, Lacour was 50 years old at the time of the ALJ's decision, and the past work that the ALJ found Lacour capable of performing is work that Lacour performed *after* graduating high school. Thus, Lacour's educational history is not contrary evidence that warrants greater mental limitations.

Lastly, Lacour argues that she "likely cannot perform [] detailed work," "likely will not be able to maintain a sustained rate of concentration, persistence and pace," and likely will be unable "to frequently adapt and change to workplace methods and routines" because "she sees deceased people and hears people talking to her." Dkt. 15 at 7–8 (quotation omitted). But the ALJ noted that Lacour "refused medication adjustments" following these hallucinations and later "reported improvement in mood," stating that "she had not had any hallucinations since her previous appointment." Dkt. 6-3 at 25. Additionally, the ALJ noted that when Lacour "was [most recently] seen by psychiatric emergency services," her "mental status examination was normal as to all 21 categories evaluated with the exception of displaying a frustrated mood, and irritable affect." *Id.* at 26.

Ultimately, the ALJ discussed all of the medical evidence regarding Lacour's mental complaints, including that the SAMCs found that Lacour had only non-severe mental impairment. The ALJ reviewed the medical evidence of record and determined that Lacour is actually more limited than those opinions suggest.

6

"That these medical experts found [Lacour] . . . to have greater mental capabilities is ultimately supportive of the ALJ's RFC determination." *Fleming v. Saul*, No. SA-19-CV-00701, 2020 WL 4601669, at *9 (W.D. Tex. Aug. 10, 2020). Accordingly, I find that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons provided above, Lacour's motion for summary judgment (Dkt. 15) is **DENIED**, and the Commissioner's motion for summary judgment (Dkt. 16) is **GRANTED**. I will enter a final judgment separately.

SIGNED this 25th day of July 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE